In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3223

MICHAEL LEVAN,

*Plaintiff-Appellee,*

*v.*

STEVEN GEORGE, SANDRA WESTERFIELD, AND
COUNTY OF PEORIA,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 06-1022—**John A. Gorman**, *Magistrate Judge.*

ARGUED FEBRUARY 11, 2010—DECIDED APRIL 28, 2010

Before KANNE, WOOD, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* Proceeding in federal court, Michael Levan accused two Peoria County, Illinois Sheriff's Deputies, who were serving as court security officers, of false arrest and excessive use of force, allegedly perpetrated during their arrest of Levan for disorderly conduct. Defendants raised the defense of qualified immunity before the district court. Upon the

district court's finding that genuine issues of material fact existed precluding defendants' motion for summary judgment on qualified immunity grounds, defendants took this appeal. Because we lack appellate jurisdiction over this appeal, we dismiss.

## I. BACKGROUND

It is not every day that we are called upon to address issues stemming from a simple parking violation. But today is one such day. Michael Levan received a parking ticket from the City of Peoria. He failed to appear at a scheduled hearing to contest the ticket. Upon Levan's failure to appear, the Assistant Corporate Counsel for the City of Peoria, Sonni Williams, sought and obtained a default judgment against Levan. In response, Levan's attorney prepared a motion to vacate the default judgment.

On February 5, 2004, Levan went to the Peoria County courthouse because he believed there was a hearing scheduled to address his motion to vacate. His case was called in courtroom 321. Levan entered the crowded courtroom and sat down at counsel table next to Assistant Corporate Counsel Williams. Before the judge took the bench, the two began to discuss his case.

Levan informed Williams that he was seeking to vacate the default judgment, to which she responded that his motion was not in her file, so it would not be decided that day. The parties dispute what exactly was said and the manner in which it was said; however, at some point, Levan reached for Williams's file. Williams

told Levan not to touch her files, but Levan insisted that the motion was in the file and that he wanted it to be heard. Williams explained that she had not received a copy of the motion, so it could not be heard that day. During the confrontation she threw her hands in the air and muttered something, but it is unclear precisely what she said.

In the course of the altercation and in the absence of the judge, the bailiff radioed for additional courtroom security. When the two uniformed courtroom security officers arrived, the bailiff explained what had happened and pointed out Levan. Officers Sandra Westerfield and Steven George then stood directly behind Levan, observing the interaction. Although whether Levan was being loud or disruptive is vigorously disputed, Westerfield stated that when it became clear to her that the dispute was escalating, she told Levan that he needed to settle down or he would be arrested for disorderly conduct.

Levan responded that Westerfield would just have to arrest him. He stood up and put his left hand behind his back, where Westerfield cuffed it. Rather than put his right hand behind his back, however, Levan either raised it over his head or pulled it back. While Levan claims he intended no threat by the movement, Officer George interpreted the movement as threatening, thinking that Levan intended to strike Williams. George grabbed Levan's right arm and brought it down to be handcuffed by Westerfield.

Both officers then claim that Levan continued to resist after being handcuffed, prompting George to remove

Levan's glasses and administer one dose of pepper spray to Levan's face. Eventually Levan was escorted from the courtroom to a holding cell.

Levan was later charged with disorderly conduct. Levan did not testify at his trial, although in closing, Levan's counsel made statements alluding to the fact that Levan knew his behavior was wrong, he accepted his punishment, and he wanted to forget the incident. Levan was acquitted of the charges.

Levan subsequently filed a complaint in federal court against Williams; Officers George, Westerfield, and Randy Weber (who was later dismissed from the case); the City of Peoria; and the County of Peoria. Levan claimed various violations, including false arrest and excessive use of force in violation of the Fourth Amendment, malicious prosecution in violation of the Fifth Amendment, deprivation of access to courts in violation of the Sixth Amendment, and a claim against the county for indemnification of the court security officers. The Fifth and Sixth Amendment claims were dismissed, so all that remains are the Fourth Amendment claims and the claim for indemnification.

The magistrate judge granted summary judgment for the defendant City and for Williams, but denied qualified immunity to defendants George, Westerfield, and the County, finding that genuine issues of material fact precluded a qualified immunity determination at the summary judgment stage of the proceedings. Defendants appealed. We now dismiss their appeal for want of appellate jurisdiction.

## II. ANALYSIS

Ordinarily an appeal can be taken only from a final judgment of the district courts. 28 U.S.C. § 1291. A denial of summary judgment when qualified immunity is the defense can be an immediately appealable final decision, *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Wernsing. v. Thompson*, 423 F.3d 732, 741 (7th Cir. 2005), which we review *de novo*, *Wernsing*, 423 F.3d at 741. Under the collateral order doctrine, a denial of qualified immunity can be properly appealable as a final decision because improperly subjecting a governmental defendant to suit is the harm in and of itself. *Mitchell*, 472 U.S. at 526 ("The entitlement [to qualified immunity] is an *immunity* from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

But just because an order denying a motion to dismiss on qualified immunity grounds is generally considered a final decision, it does not mean that the right to appeal that order is unlimited. If the denial of qualified immunity turns on factual rather than legal questions, the denial is not properly subject to appellate jurisdiction under the collateral order doctrine because the decision is not "final." *Johnson v. Jones*, 515 U.S. 304, 313-18 (1995); *Wernsing*, 423 F.3d at 741.

Before we reach the primary contention in this case, however, we must first address whether the district court's denial of summary judgment was in fact a denial of qualified immunity. We are faced with this question because in deciding defendants' summary judgment

motion, the district court never used the term "qualified immunity."

We agree with defendants that the court's decision on probable cause amounted to a rejection of their qualified immunity defense. If the undisputed facts demonstrated that the officers had probable cause to arrest Levan, then he could not prevail on his claim of wrongful arrest; the officers would be entitled to prevail on the merits, as well as on the first element of the qualified immunity defense. Even if the undisputed facts showed that the officers had made a reasonable error when they arrested Levan, qualified immunity would be available, though not a judgment on the merits. *Gonzalez v. City of Elgin,* 578 F.3d 526, 540 (7th Cir. 2009) ("Accordingly, qualified immunity is an available defense for 'officers who make a reasonable error in determining whether there is probable cause to arrest an individual.'" (*quoting Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008))). Here, the district court found that there were genuine issues of material fact with respect to both the existence of probable cause and whether Levan acted in an unruly manner before, during, and after his arrest. Based on the former finding, the court denied qualified immunity on the wrongful arrest claim; based on the latter finding, it denied qualified immunity on the excessive force claim. The next question is whether those rulings are properly before this court.

The *Johnson* case (which also arose in Illinois) involved a relatively analogous issue. In that case, the district court denied the officers' summary judgment motions

based on qualified immunity because genuine issues of material fact existed regarding whether the officers were the same ones involved in the offense. 515 U.S. at 307-08. This court dismissed the officers' appeal on the grounds that we had no appellate jurisdiction to determine whether the record raised a genuine issue of material fact. *Id.* at 308. In affirming our determination that the lower court's denial was not a "final decision," the Supreme Court delineated the boundaries of appeals based on qualified immunity. *Id.* at 313-18.

As the Court explained, the rationale behind limiting immediately appealable qualified immunity questions to those involving only legal issues is threefold. First, as the precedential case for qualified immunity, *Mitchell* limited its holding to appeals challenging only the purely legal issue of whether the law was clearly established; it does not allow appellate courts to examine the district courts' conclusions of what factual issues are "genuine" for purposes of summary judgment determinations. *Id.* at 313. Second, the only reason qualified immunity decisions can be brought within the realm of § 1291's "final decision" requirement is that the decisions being immediately appealed "involve[] issues significantly different from those that underlie the plaintiff's basic case." *Id.* at 314. If the legal issue being appealed is not significantly different than the factual issues underlying the claim, this separability requirement will be nearly impossible to satisfy. *Id.* Third, the competing interests underlying questions of finality weigh in favor of finding that "'[i]mmunity appeals . . . interfere less with the final judgment rule if they [are]

limited to cases presenting neat abstract issues of law.' " *Id.* at 317 (*quoting* 5A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3914.10, at 664 (2d ed. 1992)).

We think the case at hand falls squarely within *Johnson*'s parameters. It is obvious to us that the separability requirement is very clearly lacking here. The magistrate judge denied defendants' claim of qualified immunity on the grounds that genuine issues of material fact existed with regard to whether Officers George and Westerfield had probable cause to arrest Levan, and whether Officer George had probable cause to use force. Although at oral argument defendants' counsel attempted to distinguish the factual determinations from the legal issue of qualified immunity, we find it nearly impossible to sever the two questions. Instead, we think it readily apparent that the question of qualified immunity turns on genuine issues of material fact. As Justice Breyer wrote in *Johnson*, when "a defendant simply wants to appeal a district court's determination that the evidence is sufficient to permit a particular finding of fact . . . it will often prove difficult to find any such separate question . . . ." *Id.* at 314. That admonition rings true here.

### III. CONCLUSION

Because we lack jurisdiction, the appeal is DISMISSED.