In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1440

IVAN HERNANDEZ, et al.,

*Plaintiffs-Appellees,*

*v.*

COOK COUNTY SHERIFF'S OFFICE, et al.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07-CV-00855—**Ronald A. Guzman**, *Judge.*

ARGUED SEPTEMBER 23, 2010—DECIDED FEBRUARY 24, 2011

Before CUDAHY, FLAUM, and WOOD, *Circuit Judges.*

CUDAHY, *Circuit Judge.* The defendants, officers of the Cook County Sheriff's Office (CCSO) and the Sheriff's Office itself, appeal from a denial of summary judgment sought on grounds of qualified immunity. We reverse the denial of summary judgment and remand for reconsideration of the qualified immunity defense.

## I. Facts and Procedural History

### A. Factual Background

The event immediately precipitating this factually confusing case was a jailbreak at the Abnormal Behavior Observation (ABO) unit of the Cook County jail on February 11, 2006. At approximately 11:30 p.m. on that date, an inmate named Patrell Doss overpowered a jail guard named Darin Gater after temporarily blinding him by throwing a cleaning solution in his face. Doss then released seven other inmates from their cells. The inmates shut off the lights and set a diversionary fire, and Doss put on Gater's uniform. In the confusion, the disguised Doss convinced other jail guards to open certain internal doors, after which the inmates beat several guards. Using keys obtained from the subdued guards, six inmates managed to escape the facility. They were soon recaptured in the Chicago area. Sheriff's Office authorities immediately suspected that the inmates had help from within the CCSO ranks, and Darin Gater soon admitted to being one who, among others, was complicit in the escape.

The six plaintiffs are former officers of the CCSO Special Operations Response Team (SORT),[1] each of whom was investigated in connection with the jailbreak. Hernandez and Rodriguez were sergeants, while the remaining four plaintiffs were regular SORT correctional officers.

---

[1] The SORT was an approximately twenty-member elite unit of the CCSO. This team was responsible for security in the jail's ABO unit.

Darin Gater identified plaintiffs Jones, Rodriguez and Michno specifically as having advance knowledge of the jailbreak, while suspicion fell on the other three officers indirectly. In particular, Gater asserted that plaintiff Jones had approached him multiple times with a proposition to stage a jailbreak to draw adverse attention to the leading Cook County Sheriff candidate, Tom Dart, in advance of a pending election. Gater asserted that Sergeant Rodriguez was present for at least one such conversation.

Plaintiffs Bailey and Davis came under suspicion because both were on duty at the jail, but away from their posts when the jailbreak occurred. Moreover, Gater described Bailey and Davis to investigators as being cozy with the inmates, allowing them to engage in prohibited conduct. Finally, plaintiff Hernandez was the shift commander for the shift immediately preceding the jailbreak. He allegedly failed to conduct a physical roll call of SORT officers for the oncoming shift, and did not respond to reports that one inmate was in possession of a shank. Hernandez left the jail at 10:00 p.m. on the night of the jailbreak.

Internal and criminal investigations followed the jailbreak, and the investigations gave rise to the plaintiffs' alleged injuries. Almost immediately after the jailbreak five of the six plaintiffs were suspended with pay "pending [the] criminal investigation." The plaintiffs claim variously that in the days following the jailbreak, investigators detained them under guard for up to 24 hours, and denied them food, water and sleep. Several claim that they were discouraged from con-

tacting a union steward or an attorney. All of the plaintiffs were brought up on administrative charges within the CCSO. Jones, Michno, Bailey, Davis and Hernandez were immediately transferred from the SORT; Rodriguez was transferred several months later. Ultimately, Hernandez, Davis and Bailey were found to have violated their professional duties. Hernandez was suspended for five days, whereas Davis and Bailey were apparently either terminated or encouraged to quit. The evidence was deemed insufficient to sustain administrative charges against the other three plaintiffs. At some time during or soon after the investigations, the SORT unit was disbanded.

The plaintiffs argue that the defendant leaders of the CCSO[2] violated their First Amendment rights,[3] because the harsh investigation and the sanctions that followed were motivated by retaliation for the plaintiffs' com-

---

[2] In particular, the defendants (and their offices during the relevant time) are Michael Sheahan, Cook County Sheriff; Tom Kaufmann, Chief of the Internal Affairs Division; Thomas Snooks, the Superintendent of the CCSO's Department of Corrections (DOC); Scott Kurtovich, DOC Assistant Director; and Dennis Andrews, the DOC's Director of External Operations; as well as the CCSO and Cook County.

[3] Based on their alleged injuries, one might expect that the plaintiffs were making a Fourth Amendment-based argument that they were arrested or detained without probable cause, or a Fifth Amendment argument based on a post-arrest denial of counsel. These are not their arguments, however, and we confine our discussion to the issues they have raised.

plaints about jail conditions and by politics within the CCSO. In addition, the plaintiffs raise emotional distress and false imprisonment claims.

In view of the plaintiffs' argument that the post-jailbreak investigation had ulterior motives, some background information is needed about the plaintiffs' workplace safety complaints and the political context at the Cook County Sheriff's Office. The plaintiffs alleged that in the months leading up to the jailbreak several of the plaintiffs had complained about jail security problems both within and outside of the CCSO chain of command. In particular, they pointed to jail overcrowding, insufficient staffing during the night shift and the need for Plexiglas in the cells. Sergeants Hernandez and Rodriguez had forwarded some of these complaints to the CCSO Inspector General's office.

As to the political context, around the time of the jailbreak the leader of the SORT, Richard Remus, had challenged Tom Dart, the presumably favored candidate and the incumbent sheriff's Chief of Staff, in the election for Cook County Sheriff. Remus drew strong support from the officers of the SORT unit, and the plaintiffs allege that this put them at odds with others within the CCSO, including defendant Kaufmann.

The plaintiffs draw support for the view that the defendants had an allegedly political motive from statements the defendants made during the post-jailbreak investigation. The plaintiffs assert that when defendant Kaufmann responded to the ABO unit following the jailbreak, he immediately linked the jailbreak with the

plaintiffs' political affiliation, shouting "this smells of Remus," and "this is a Remus set-up." In addition, while questioning the plaintiffs, investigators made statements linking the jailbreak to the political context in the CCSO, including that "we know you guys had something to do with this because of Remus." When Bailey and Michno went to receive their suspension and reassignment orders from defendant Andrews, he allegedly stated that the investigation was "political" and out of his hands.

The plaintiffs also allege that two other sets of officers, the Post 3 and Post 78 officers, were present for the jailbreak. While their failure to stop the inmates was essential for the escape, these officers were not formally investigated or suspended. This omission, the plaintiffs argue, illustrates that ulterior motives underlay the investigation. The defendants, on the other hand, argue that the guards who were not investigated were violently subdued by the escaping inmates and that this explains why they did not come under the same scrutiny.

## B. Procedural History

The plaintiffs filed a complaint in February of 2007, raising five claims: (1) retaliation in violation of the right to free political association under the First Amendment; (2) retaliation in violation of the right to free speech under the First Amendment; (3) conspiracy to retaliate based on political affiliation, in violation of the First

Amendment;[4] (4) state law intentional infliction of emotional distress; and (5) state law false imprisonment.

Soon after the defendants answered the complaint, they moved to dismiss under Fed. R. Civ. P. 12(b)(6), claiming qualified immunity in a four-page discussion. The defendants separately argued that they were entitled to statutory immunity on the plaintiffs' state law claims for emotional distress and false imprisonment.[5] The plaintiffs responded to the contrary, and the district court apparently did not rule on this motion to dismiss.

Notwithstanding that the motion to dismiss had not been adjudicated, the defendants moved for summary judgment on August 8, 2008. The court acknowledged in a minute order that "[d]efendants have represented that the pending summary judgment motion incorporates the arguments raised in the motion to dismiss."

In their opening memorandum in support of summary judgment, the defendants argued only briefly their entitlement to qualified immunity. The qualified

---

[4] In characterizing the § 1983 conspiracy claim as based on political retaliation rather than free speech retaliation, we rely on the district court's description in its summary judgment memorandum.

[5] The defendants pointed to the Illinois Local Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-202, providing that "[a] public employee is not liable for his act . . . in the . . . enforcement of any law unless such act . . . constitutes willful and wanton conduct."

immunity discussion comprises three paragraphs, the first two of which consist exclusively of discussion of qualified immunity case law, and the third of which attempts to apply the law to the facts of this case. The third paragraph reads in its entirety as follows:

> Applying the *Anderson*[6] standard to the case at bar, Plaintiffs name all of the Defendants in their individual capacities. A reasonable official would not have known that by investigating the escape of six dangerous inmates and the potential criminal or negligent involvement of correctional officers would violate any constitutional right. The investigation was done in a lawful manner and was reasonable in relation to the specific facts confronting the public official[s] at the time they acted.

Unlike in their memorandum in support of their motion to dismiss, at summary judgment the defendants did not cite the Illinois Tort Immunity Act and they made no argument that they were entitled to immunity for the counts for state law emotional distress and false arrest.

In the plaintiffs' response to the defendants' summary judgment motion, they argued that the defendants are not entitled to qualified immunity on the merits and also claimed that the defendants had waived qualified immunity by arguing it deficiently. Then, the defendants filed a reply brief in which they discussed for four

---

[6] *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987).

pages their claim for qualified immunity with respect to the plaintiffs' First Amendment claims. The defendants' reply brief discussion is much more thorough in applying qualified immunity case law to the facts of the present case than their main brief.

But the district court denied the defendants summary judgment on the basis of qualified immunity. In its memorandum disposing of the defendants' summary judgment motion, the district court struck certain of the defendants' facts for noncompliance with Local Rule 56.1.[7] The court then held that the defendants had waived their qualified immunity argument by giving it such limited treatment in their brief supporting summary judgment. Thus, the court stated,

> Defendants' assertion of qualified immunity deserves as much attention as they have given it. Defendants' argument, which consists of three sentences, is so deficient that the Court deems it waived for purposes of the instant motion. The Court denies defendants' motion for summary judgment based on qualified immunity.

The court did not reach the summary judgment merits or inquire whether, if the issue had not been waived, the defendants would be entitled to qualified immunity.

---

[7] That Rule requires that parties submit with their summary judgment memoranda a statement of material facts, "including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon[.]"

The outcome of the summary judgment motion was to grant only partial summary judgment in favor of the defendants. In particular, the district court granted the defendants summary judgment on the merits as to the First Amendment claim based on retaliation for workplace complaints. But the court denied summary judgment as to the First Amendment political retaliation claim and the related conspiracy claim as well as the state law emotional distress and false imprisonment claims.

The defendants appeal from the denial of qualified immunity as to the political retaliation claim. They argue only that there was error in denying qualified immunity as to the First Amendment claims, but there is no similar argument with respect to the state law claims for intentional infliction of emotional distress and false imprisonment; thus they apparently concede that state law immunity is not now at issue. The plaintiffs argue in their opening brief:

> Political retaliation is the lifeblood of this case. If the Court finds qualified immunity, Plaintiffs' suit is imperiled as tort law counts would be the only remnants.

We now therefore consider only whether the district court erred in denying summary judgment on the grounds of qualified immunity as to the alleged violations of the First Amendment.[8]

---

[8] Although the district court granted summary judgment on the merits as to count two, the First Amendment workplace

(continued...)

## II. Jurisdiction and Waiver

### A. Law Applicable to Jurisdiction and Waiver

This court has jurisdiction over an appeal from a denial of summary judgment only under limited circumstances because a denial of summary judgment is not ordinarily a "final decision" for purposes of appellate jurisdiction under 28 U.S.C. § 1291. The Supreme Court has explained, however, that an appeal from a denial of summary judgment on qualified immunity grounds may be entertained where the denial turns on an issue of law. *Mitchell*, 472 U.S. at 530; *see also Levan v. George*, 604 F.3d 366, 369 (7th Cir. 2010). Indeed, so long as the issue is a legal one, we can consider the propriety of a denial of qualified immunity even on grounds other

---

[8] (...continued)

complaint-related claim, we nevertheless consider the denial of qualified immunity as to that claim to be part of this appeal. A grant of qualified immunity is distinct from a victory on the merits, in that qualified immunity recognizes a right not to litigate. *See Mitchell v. Forsyth*, 472 U.S. 511, 527-28 (1985). The plaintiffs properly did not cross-appeal from the district court's merits adjudication of this claim. *See Ill. ex rel. Hartigan v. Peters*, 861 F.2d 164, 166 (7th Cir. 1988) (explaining that pendent appellate jurisdiction of a non-appealable interlocutory order is appropriate "if, but only if, there are compelling reasons for not deferring the appeal of the [non-appealable] order to the end of the lawsuit[.]"). But the plaintiffs could certainly appeal in the future, and at that time, the distinction between qualified immunity and prevailing on the merits could become important.

than those relied on in the district court. *See Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996) ("regardless of the district court's reasons for denying qualified immunity, we may exercise jurisdiction over the . . . appeal to the extent it raises questions of law."). An appellate court does not have jurisdiction, however, where qualified immunity involves factual issues. *See Levan*, 604 F.3d at 369.

Accordingly, a finding of waiver is a legal determination which enables appellate review of the denial of qualified immunity. *See e360 Insight v. Spamhaus Project*, 500 F.3d 594, 599 (7th Cir. 2007) (explaining that "the legal question of whether [a party's] conduct amounts to waiver [is reviewed] de novo."); *see also Pasco v. Knoblauch*, 566 F.3d 572, 575 (5th Cir. 2009) (reviewing *de novo* the issue of waiver of qualified immunity because it formed the basis for the denial of summary judgment); *Eddy v. V.I. Water & Power Auth.*, 256 F.3d 204, 209 (3d Cir. 2001) (reviewing *de novo* a denial of qualified immunity based on waiver).

Turning to the merits of the waiver issue, the Supreme Court has described waiver as the "'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). It is well established in our precedents that "skeletal" arguments may be properly treated as waived, *see, e.g.*, *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991), as may arguments made for the first time in reply briefs, *see, e.g.*, *United States v. Diaz*, 533 F.3d 574, 577 (7th Cir. 2008).

The underlying concern is to ensure that the opposing party is not prejudiced by being denied sufficient notice to respond to an argument. *See generally Egert v. Conn. Gen. Life Ins. Co.*, 900 F.2d 1032, 1035 (7th Cir. 1990).

## B. Waiver

The district court erred by ruling that the defendants waived their qualified immunity argument as to the First Amendment retaliation claims. It is certainly true that the discussion in their opening memorandum in support of summary judgment left much to be desired, but this is not the same as saying that it evinces a relinquishment of the qualified immunity defense. The summary judgment brief contained three paragraphs on the topic of qualified immunity, beneath the heading, "Qualified Immunity." The defendants' assertion in their opening brief of a qualified immunity defense was unambiguous.

In addition to the cursory treatment of the qualified immunity issue in their summary judgment opening brief, the defendants supplied a four-page discussion of qualified immunity in their reply brief in favor of summary judgment. While arguments made for the first time in a reply brief are generally treated as waived, it does not necessarily follow that arguments that are better developed in a reply brief are waived. Therefore, this case is readily distinguishable from the numerous precedents in this circuit upholding findings of waiver where argu-

ments were not raised until the reply brief.[9]

Moreover, it is absolutely clear that the defendants' underdeveloped opening brief argument supplied adequate notice to the plaintiffs and caused them no prejudice. The plaintiffs' summary judgment response brief contained a four-page discussion of the defendants' qualified immunity theory—attacking an argument that they now contend was so deficient as to constitute a waiver. In addition, the plaintiffs could not have been surprised to see qualified immunity appear in the defendants' summary judgment motion because they knew the defendants were raising qualified immunity from the beginning of the case.

In sum, qualified immunity has been at issue at every significant stage of this litigation. In their summary judgment filings, it was unambiguous that the defendants were arguing that they were entitled to qualified immunity, even if inexpertly. While we do not condone the

---

[9] In addition, this case is distinguishable from our cases holding that deficient discussion in an opening brief could not be redeemed by fuller treatment in a reply brief, in that our cases meeting this description concern even weaker opening brief treatment. *See Citizens Against Ruining the Env't v. EPA*, 535 F.3d 670, 675 (7th Cir. 2008) (finding that waiver due to a one-sentence section in an opening brief could not be redeemed by lengthier treatment in the reply brief); *Bakalis v. Golembeski*, 35 F.3d 318, 326 n.8 (7th Cir. 1994) (finding an argument waived where it was "made only in a footnote in the opening brief and was not developed fully until the reply brief.").

defendants' failure to present their argument fully at what they must have known would be a critical moment in the litigation, as a matter of law their oversight in this case does not amount to a waiver.

### III.  Qualified Immunity Merits

### A.  Law Applicable to Qualified Immunity

Since the issue of qualified immunity was not waived, we will proceed to address the merits. Generally, qualified immunity protects government agents from liability when their actions do not violate "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This involves two questions: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Whether the defendants are entitled to qualified immunity will depend on what constitutional affronts the plaintiffs argue.

### 1.  Whether a Constitutional Right Was Violated

We have formulated the inquiry into a public employee's First Amendment rights as follows:

> To determine whether a public employee has a pro-
> tected First Amendment right, we undertake a two
> part inquiry, known as the *Connick-Pickering*[10] test.
> First, the court must determine whether the plaintiff's
> speech addressed a matter of public concern. If it did,
> the court must then apply the *Pickering* balancing
> test to determine whether "the interests of the [plain-
> tiff] as a citizen in commenting upon the matters
> of public concern" are outweighed by "the interest
> of the state, as an employer, in promoting the
> efficiency of the public services it performs through
> its employees."

*Coady v. Steil*, 187 F.3d 727, 731 (7th Cir. 1999) (internal
citations omitted).

If, on the other hand, a public employee's speech does
not implicate a matter of public concern, the *Pickering*
balancing test is not reached because "the Constitution
does not insulate [the employee's] communications
from employer discipline." *Garcetti v. Ceballos*, 547 U.S.
410, 421 (2006). In *Spiegla v. Hull*, 481 F.3d 961 (7th Cir.
2007), we explained that *Garcetti* stands for the proposi-
tion that "public employees speaking 'pursuant to
their official duties' are speaking as employees, not citi-
zens, and thus are not protected by the First Amendment
regardless of the content of their speech." *Spiegla*, 481
F.3d at 965.

---

[10] *Connick v. Myers*, 461 U.S. 138 (1983); *Pickering v. Board of
Educ. of Twnshp. H.S. Dist. 205*, 391 U.S. 563 (1968).

In all cases, we consider only the speech that resulted in the adverse action against the employee. We have stated that "[t]he scope of our inquiry is defined by the number of instances in which the plaintiff has produced 'specific, nonconclusory allegations' reasonably linking her speech to employer discipline." *Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1500 (7th Cir. 1994) (citing *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1368-71 (7th Cir. 1993)).

### 2. Whether a Violated Right Was Clearly Established

The second inquiry, *see Saucier*, 533 U.S. at 201, is whether the constitutional standards at issue were clearly established at the time the alleged violation occurred. *See Purvis*, 614 F.3d at 720. "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Most of the defendants' arguments here in favor of qualified immunity are addressed to this latter part of the *Saucier* inquiry, in that they revolve around reasons why the defendants might have been objectively reasonable in investigating and sanctioning the plaintiffs following the jailbreak.

This court has explicitly reserved the question whether government defendants *per se* avoid First Amendment § 1983 claims by demonstrating that they had probable cause. *See Abrams v. Walker*, 307 F.3d 650, 657 (7th Cir. 2002), *overruled on other grounds by Spiegla v. Hull*, 371

F.3d 928, 941-42 (7th Cir. 2004) (*Spiegla I*). So it would be fruitless to pursue probable cause as such. Nevertheless, it is clear that evidence of probable cause may act as "highly valuable circumstantial evidence" that the complained-of conduct "would have occurred without a retaliatory motive." *Hartman v. Moore*, 547 U.S. 250, 261 (2006). Therefore, facts which would be relevant to probable cause in a Fourth Amendment case will also be relevant to the reasonableness of the defendants' actions in a First Amendment case. *See, e.g.*, *Purtell v. Mason*, 527 F.3d 615, 622, 626 (7th Cir. 2008).

### B.  The Merits of Qualified Immunity

### 1.  Retaliation for Workplace Safety Complaints

We are able to determine as a matter of law, based purely on the undisputed facts presented to the district court, that the defendants are entitled to qualified immunity as to the plaintiffs' claim of retaliation based on workplace complaints. As noted, the district court reviewed the facts and concluded that based on the undisputed facts, the plaintiffs were acting as public employees when they complained about unsafe conditions at the jail. Specifically, in complaining about overcrowding, the lack of supervision and the need for Plexiglas, the plaintiffs were acting pursuant to their duties as set forth in the CCSO's General Orders. Therefore,

consistent with *Spiegla I*, 371 F.3d at 936,[11] the district court concluded that the plaintiffs did not enjoy First Amendment protections.

The conclusion based on undisputed fact that the plaintiffs acted as public employees in complaining, which the district court found to be dispositive of the merits, is equally dispositive of the qualified immunity question that the district court might have been asking. The district court properly determined that there was no violation of a constitutional right; therefore, the defendants are entitled to qualified immunity on this claim as a matter of law. *See Terry v. Richardson*, 346 F.3d 781, 782 (7th Cir. 2003).

## 2. Political Retaliation

As to the political retaliation-based claims (i.e., claims one and three), we will not attempt to determine whether, as a matter of law, the defendants are entitled to qualified immunity. We have no decision to review because the

---

[11] The holding of *Spiegla* on which the district court relied has been broadened by the Supreme Court. As we observed in our second encounter with *Spiegla*, 481 F.3d 961 (7th Cir. 2007) (*Spiegla II*), the Supreme Court's *Garcetti v. Ceballos* opinion, 547 U.S. 410 (2006), prescribed an expanded view of an employee's non-protected "official duties." *Spiegla II*, 481 F.3d at 966. *Garcetti* clarified that "official duties" encompass even unusual communications outside an employee's "core" job functions. *See id.*; *Trigillo v. Snyder*, 547 F.3d 826, 829 (7th Cir. 2008). Thus, since *Spiegla I*, the definition of non-protected speech has been broadened.

court, having decided the matter was waived, never reached the question whether the defendants are entitled to qualified immunity and consequently to summary judgment. In its short summary judgment memorandum, the district court did not determine which facts were disputed and undisputed in connection with the political retaliation claims, or whether any disputed facts were material to the question of qualified immunity. The court made no comment about the plaintiffs' assertions that they were openly supportive of Remus, or that the defendants knew of that support or that the support motivated an overly vigorous investigation and harsh penalties.[12] The district court also did not inquire into facts which, for purposes of the second *Saucier* inquiry, might have made the defendants objectively reasonable in believing that they were not violating the plaintiffs' First Amendment rights. This oversight is especially problematic given the simple facts of a serious jailbreak and the suspicion of internal cooperation, which are undisputed and which make the undertaking of a vigorous investigation unsurprising.

We are not reassured by the district court's statement that "the record is rife with genuine issues of material fact regarding [the First Amendment political retaliation] claim." Although this statement was perfectly adequate to explain why summary judgment on the

---

[12] We note that this cannot be solely attributable to the striking of the defendants' facts for noncompliance with Local Rule 56.1, since the allegations initially necessary to evaluate the political retaliation claims were supplied by the plaintiffs, not the defendants.

merits ought to be denied, it is too conclusory to serve as a basis for this court to find against qualified immunity, particularly when we do not have the benefit of reviewing the district court's determinations of disputed versus undisputed fact, or materiality to qualified immunity.[13]

Issues relating to whether facts are disputed are appropriately determined in the first instance by the district court. This procedure is consistent with our present reluctance to adjudicate those issues which have not been addressed by the district court. We cannot easily determine whether the defendants are entitled as a matter of law to qualified immunity, and we remand for the district court to reconsider whether the defendants are entitled to summary judgment on the basis of qualified immunity as to the political retaliation claims.

The denial of summary judgment with respect to the political retaliation claims is REVERSED and the case REMANDED for proceedings consistent with this opinion.

---

[13] To emphasize, we do not fault the district court for failing to decide disputed issues of fact, since that is outside the scope of summary judgment, including when a motion for summary judgment is based on qualified immunity. *See Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). But the court may identify disputed and undisputed facts and determine whether any disputed facts are material to the question of qualified immunity.