In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-1941

IVAN HERNANDEZ, et al.,

*Plaintiffs-Appellees*,

*v.*

MICHAEL F. SHEAHAN, et al.,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 00855—**Ronald A. Guzmán**, *Judge*.

SUBMITTED OCTOBER 16, 2012—DECIDED APRIL 1, 2013

Before CUDAHY, FLAUM, and WOOD, *Circuit Judges*.

CUDAHY, *Circuit Judge*. We are once again asked to consider a case in which prison guards were investigated and reassigned after a major jailbreak occurred on their watch. We previously outlined the peculiar facts of this case in detail, *Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 909-11 (7th Cir. 2011), so a brief recitation is all that is required here.

Plaintiffs, Ivan Hernandez, Roberto Rodriguez, Bill Jones, Gene Michno, Marvin Bailey and Richard Davis, are correctional officers with the Cook County Sheriff's Office (the Officers). They were part of a specialized unit, the Special Operations Response Team (SORT). This team guarded inmates in the Cook County Jail's Abnormal Behavioral Observation Unit (ABO). In 2006, a major escape occurred from the ABO, with six violent felons breaking loose. A break of this size raised suspicion of inside assistance. An intense investigation, headed by the director of internal affairs Timothy Kaufmann, naturally followed. A correctional officer, Darin Gater, confessed to allowing the six inmates to escape. His confession named Jones, Rodriguez and Michno as assisting him or having advance knowledge of the escape. He also identified Bailey and Davis as having reputations as officers that inmates could "work with." Gater later unsuccessfully attempted to suppress this confession as having been coerced. He was ultimately tried, convicted and sentenced for his role in the jailbreak. The Officers were investigated in relation to the jailbreak and reassigned after the disbandment of SORT.

The Officers filed suit against the Sheriff's Office and the investigators, claiming psychological and emotional injuries from the investigation. The Officers contend that they were investigated by Kaufmann due to their political support for Richard Remus, a former director of SORT and a candidate for Sheriff of Cook County at the time of the jailbreak. They alleged retaliation in violation of their First Amendment right to political

association (Count I); retaliation of their First Amendment right to free speech (Count II); conspiracy to retaliate (Count III); intentional infliction of emotional distress (Count IV); and false imprisonment (Count V). The district court granted summary judgment for the Sheriff's Office on Count II, but denied qualified immunity on the remaining counts because it deemed that defense had been waived. We disagreed and remanded the case for further consideration of qualified immunity, cautioning that "the simple facts of a serious jailbreak and the suspicion of internal cooperation, . . . make the undertaking of a vigorous investigation unsurprising." *Hernandez,* 634 F.3d at 916.

On remand, the district court again denied summary judgment, finding genuine issues of material fact relating to the political retaliation claims, the veracity of Gater's confession and the fact that no other officers were investigated for the jailbreak. We disagree and so we reverse.

I.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). In determining qualified immunity, the court asks two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional

right and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Id.* at 232. Courts may exercise discretion in deciding which question to address first. *Id.* at 236. As we explained in our prior opinion, the focus of this case is the second inquiry.

We begin our analysis by examining whether the Sheriff's Office had probable cause to investigate the Officers. It is apparent in the record before us that the Sheriff's Office did have legitimate reasons to investigate the Officers.

As noted earlier, a jailbreak of multiple dangerous prisoners from a special unit would raise suspicion of inside assistance and trigger an internal investigation. *Hernandez*, 634 F.3d at 916. The investigation of the Officers was further justified by available evidence. Gater implicated Jones, Rodriguez, Michno, Davis and Bailey in a signed statement. The district court denied that this would establish probable cause because "it is disputed whether the statement was false and coerced and whether . . . investigators were aware of the fact that the statement was false and coerced." *Hernandez v. Cook Cnty. Sheriff's Office*, 07 C 855, 2012 WL 1079904 (N.D. Ill. Mar. 30, 2012). However, Gater failed to suppress the statement in state court proceedings on those very grounds. As the state court ruled that Gater's statement was voluntary, the district court cannot credit the Officers' claims that the statement was coerced. The state court also commented on the veracity of the statement, noting that it provided "[t]he factual basis for the jury's verdicts."

The district court also seems to have relied on the notion that the Officers were the only individuals singled out for investigation. We note that even if this were true, the fact that the Officers were implicated in the escape by another guard might account for this disparity. However, other individuals were reprimanded. Thomas Snooks, who is a defendant in this case, was suspended for five days because he called Remus on his cellular phone following the escape, and Captain Earnest Wright was disciplined for failing to prepare proper written entries into the watch commander log.

Due to the fact that the authorities had probable cause to investigate the Officers, we are less concerned about other possible motivations for their treatment. While Kaufmann and others may have expressed negative opinions regarding the Officers' support of Remus, we find it objectively reasonable to investigate officers implicated in a multi-felon jailbreak.

We REVERSE the judgment of the district court.