In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1055

RENEE D. GUSTAFSON,

*Plaintiff-Appellee,*

*v.*

WILLIAM ADKINS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:11-cv-05852 — **John Z. Lee**, *Judge.*

ARGUED SEPTEMBER 17, 2015 — DECIDED OCTOBER 16, 2015

Before FLAUM, MANION, and SYKES, *Circuit Judges.*

FLAUM, *Circuit Judge*. In May 2007, defendant-appellant
William Adkins, a detective at the Jesse Brown Veterans Af-
fairs ("VA") Medical Center in Chicago, installed a hidden
surveillance camera in the ceiling of an office used by female
officers as a changing area. The camera captured images of
female officers dressing and undressing. VA personnel dis-
covered the covert surveillance equipment during a renova-

tion of the VA Medical Center in September 2009, at which
time Renee Gustafson first learned that the camera had cap-
tured images of her changing from early 2007 through April
2009. Gustafson filed suit against Adkins on August 24, 2011,
alleging an unconstitutional search in violation of the Fourth
Amendment. Adkins appeals the district court's denial of
defendant's motion for summary judgment on qualified
immunity grounds. We affirm.

## I. Background

Renee Gustafson served as a police lieutenant supervisor
at the Jesse Brown VA Medical Center in Chicago from Sep-
tember 2007 through April 2009. During this period, William
Adkins worked as a detective for the Police and Security
Service at the Medical Center. Adkins reported to the Chief
of the Police and Security Service, Myron K. Thomas.

At all times relevant to the events in question, the Medi-
cal Center did not house a designated female locker room for
Police and Security Service personnel. Female officers used
an office, commonly referred to as the "old supervisors' of-
fice," to change into and out of their work uniforms before
and after shifts. The old supervisors' office was also in active
use as a supervisors' office. From 2007 through September
2009, four supervisors, two female and two male, had keys
to and made use of the old supervisors' office.

Gustafson attests that it was common knowledge that
female personnel used the office as a changing room. Ac-
cording to Gustafson, both Adkins and Thomas observed
her and another female officer entering the old supervisors'
office in street clothes and exiting in uniform (or vice versa),

and thus must have known that the room was used to change into and out of clothing.

On or around May 18, 2007, Chief Thomas instructed Adkins to install a hidden surveillance camera in the ceiling of the old supervisors' office. Adkins asked why the camera was being installed and Thomas explained that surveillance was needed to identify supervisors who were sleeping in that office while on duty. Adkins, who was hesitant to install a camera in an area where female supervisors changed their clothes, contacted two sources to inquire about the legality of the instruction: the VA's Office of the Inspector General Investigator and Assistant Chief Cherrylynn Seals. Both sources informed Adkins that the use of a surveillance camera in the old supervisors' office would be illegal.[1] Adkins relayed this information to Chief Thomas and asked whether Thomas had obtained authorization for placement of the camera. Thomas told Adkins "not to worry about that" and to "just install the surveillance camera."

Later in May, Adkins installed covert video surveillance equipment in the ceiling tiles of the old supervisors' office. The camera captured images of female officers dressing and undressing. These images were sent to Chief Thomas's office for viewing.

VA personnel discovered the covert surveillance equipment during a renovation of the VA Medical Center in September 2009. On September 2, 2009, Gustafson learned that

---

[1] Under 720 Ill. Comp. Stat. Ann. § 5/26-4 (2012), which is entitled "Unauthorized Video Recording and Live Video Transmission," it is a crime to videotape any person in a "locker room" or "changing room" without consent.

the surveillance camera had captured images of her changing her clothes in the old supervisors' office from early 2007 through April 2009.

Gustafson filed suit against defendants Thomas, Adkins, and the United States on August 24, 2011. Her complaint alleged that Thomas and Adkins performed an unconstitutional search, and that their employer, the United States, tortiously invaded her privacy. On March 13, 2013, the district court dismissed the United States as a defendant because the Office of Workers' Compensation Program accepted Gustafson's Federal Employees' Compensation Act claim.

The district court denied Thomas and Adkins's motion to dismiss on August 27, 2013. Adkins then moved for summary judgment asserting qualified immunity from Gustafson's claims.[2] The district court denied Adkins's motion on December 16, 2014. Adkins appeals.

## II. Discussion

Adkins appeals the district court's denial of not only his motion for summary judgment based on the defense of qualified immunity, but also his earlier motion to dismiss. He again raises arguments that were unsuccessful at the motion to dismiss stage, namely that Gustafson's *Bivens* claim is precluded by the "comprehensive remedial scheme[s]" laid out in the Civil Service Reform Act ("CSRA") and the Federal Employees' Compensation Act ("FECA").

We review the district court's denial of the motions. Although Adkins's appeal arises out of the denial of his motion

---

[2] Thomas neither moved for summary judgment nor moved to join Adkins's motion.

for summary judgment on qualified immunity grounds, we also have jurisdiction to consider the question raised in Adkins's motion to dismiss: whether Gustafson's complaint states a cause of action cognizable under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).[3] *See Vance v. Rumsfeld*, 701 F.3d 193, 197–98 (7th Cir. 2012) (en banc), *cert. denied*, 133 S. Ct. 2796 (2013) (holding that the Court had jurisdiction to address the merits of *Bivens* claims brought against defendant, even though appellate jurisdiction was based on the district court's denial of a qualified immunity defense to those claims).

**A. Gustafson's *Bivens* Claim Is Not Precluded by Either the CSRA or FECA**

We first turn to Adkins's argument that Gustafson's Fourth Amendment *Bivens* claim is precluded by the "comprehensive remedial scheme[s]" laid out in the CSRA and FECA.[4] In *Schweiker v. Chilicky*, the Supreme Court held that a *Bivens* remedy is not available where the design of a government program indicates that Congress has provided what it considers adequate remedial mechanisms for any constitutional violations that may occur. 487 U.S. 412, 423 (1988). We review de novo the district court's dismissal of Adkins's motion to dismiss pursuant to Federal Rule of Civil Procedure

---

[3] *Bivens* was the first time the Supreme Court recognized that a victim of a Fourth Amendment violation by federal employees had a nonstatutory claim for damages.

[4] As noted by the district court, there are two situations where *Bivens* remedies are not available. The first is where Congress has designed a comprehensive remedial scheme. The second is when there are "special factors" that suggest a court should hesitate before authorizing a new kind of federal litigation. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

12(b)(6), accepting as true all the factual allegations in the complaint. *Vinson v. Vermilion Cnty.*, 776 F.3d 924, 925, 928 (7th Cir. 2015).

### 1. *Gustafson's Claim is Not Precluded by the CSRA*

Adkins argues that the CSRA constitutes a "comprehensive system" to address prohibited personnel practices regarding federal employees, including violations of federal employees' constitutional rights. He contends that the CSRA covers Gustafson's Fourth Amendment claim, and that a *Bivens* remedy is therefore unavailable. However, the plain language of the CSRA and the relevant case law reveal that Adkins's conduct is not a "personnel action" within the ambit of the statute.

The CSRA establishes a "framework for evaluating adverse personnel actions against [federal employees]." *United States v. Fausto*, 484 U.S. 439, 443 (1988) (alteration in original) (citation and internal quotation marks omitted). The CSRA defines "personnel action" for which a claim under the CSRA may be raised to include: (i) appointment; (ii) promotion; (iii) disciplinary or corrective action; (iv) detail, transfer, or reassignment; (v) reinstatement; (vi) restoration; (vii) reemployment; (viii) performance evaluation; (ix) decision concerning pay, benefits, or awards; (x) decision to order psychiatric testing or examination; (xi) implementation or enforcement of any nondisclosure policy, form, or agreement; and (xii) any other significant change in duties, responsibility, or working conditions. 5 U.S.C. § 2302(a). The CSRA may preempt federal claims that fall within its scope even when its remedy is not perceived as equally effective. *Bagola v. Kindt*, 131 F.3d 632, 641 (7th Cir. 1997); *see also Collins v. Bender*, 195 F.3d 1076, 1079 (9th Cir. 1999) ("[T]he

CSRA can preclude *Bivens* actions even where the CSRA does not provide an alternative remedy.").

Under the plain language of the statute, the term "personnel action" does not encompass Adkins's conduct. Adkins claims that installing the hidden camera was a "disciplinary or corrective action" within the scope of the CSRA because the intent was to catch officers sleeping on duty or deter them from doing so. Yet, construing the facts in the light most favorable to Gustafson, there is scant evidence that the camera was put in place for this purpose. Moreover, we question why Chief Thomas and Adkins failed to secure proper authorization for their purported investigation of officers sleeping in the old supervisors' office. We also question the need for *hidden* surveillance equipment, if the goal was to deter officers from sleeping in the office.

The case law suggests that Adkins's conduct is closer to a warrantless search outside the scope of the CSRA than a "disciplinary or corrective action." In *Bush v. Lucas*, the Supreme Court identified actions by supervisors against federal employees that would not be defined as "personnel actions" under the CSRA, such as wiretapping or warrantless searches.[5] 462 U.S. 367, 385 n.28 (1983). Various circuit courts

---

[5] *Bush* involved an action brought by an aerospace engineer against the director of a federal space flight center to recover for an alleged First Amendment violation. 462 U.S. at 369–70. The Supreme Court held that because petitioner's claims arose out of an employment relationship governed by "comprehensive procedural and substantive provisions giving meaningful remedies against the United States," namely the CSRA, the Court could not provide a new non-statutory damages remedy. *Id.* at 368. However, the Court noted that "certain actions by supervisors against federal employees, such as wiretapping … [or] warrantless

have considered the distinction between CSRA-precluded "personnel actions" and *Bivens* claims that fall outside the purview of the CSRA. For instance, in *Orsay v. Dep't of Justice*, the Ninth Circuit held that the CSRA precluded plaintiffs' complaints about the punishment imposed on an employee because this conduct constituted "disciplinary or corrective action." 289 F.3d 1125, 1131–32 (9th Cir. 2002), *abrogated on FTCA grounds by Millbrook v. United States*, 133 S. Ct. 1441 (2013). By contrast, the Ninth Circuit determined that aiming a loaded gun at employees did not fit any of the CSRA's definitions of "personnel action." *Id.* at 1131; *see also Stewart v. Evans*, 275 F.3d 1126, 1130 (D.C. Cir. 2002) (holding that an illegal search by federal agency employees of plaintiff's private documents pertaining to a discrimination complaint she had filed was not a "personnel action" covered by the CSRA); *Brock v. United States*, 64 F.3d 1421, 1424–25 (9th Cir. 1995) (holding that plaintiff's claims involving rape and sexual assault did not fit within the category of "personnel action"). We therefore conclude that Adkins's installation of a hidden camera in a female changing area is not a "personnel action" covered by the CSRA.

Even assuming, arguendo, that Adkins's conduct was a "personnel action" under the CSRA, we would still find that it requires a judicial remedy. We have interpreted *Bush* as allowing employees to seek a judicial, rather than an administrative, remedy in actions involving "criminal and outrageous conduct" by a supervisor. *Moon v. Phillips*, 854 F.2d 147, 150 (7th Cir. 1988). The installation of covert surveillance equipment in a changing area used by female officers

---

searches … would not be defined as 'personnel actions' within the [CSRA]." *Id.* at 385 n.28.

is "criminal and outrageous" such that we may adjudicate Gustafson's *Bivens* claim.[6] At a minimum, Adkins's conduct extends beyond the bounds of "personnel action," as defined by the CSRA, and is thus not precluded by it.

As a result, we find that the district court properly rejected Adkins's argument that the CSRA precluded Gustafson's *Bivens* claim at the motion to dismiss stage.

2. *Gustafson's Claim is Not Precluded by the FECA*

Adkins also contends that Gustafson's *Bivens* action is precluded by the FECA. According to Adkins, the FECA's comprehensive remedial scheme bars Gustafson's Fourth Amendment claim. We find that the district court properly dismissed this argument in the first instance.

The FECA provides the exclusive remedy against "the United States or an instrumentality thereof" to compensate a federal employee for a work-related "injury," defined as "injury by accident [and] disease proximately caused by the employment." 5 U.S.C. §§ 8101(5), 8102(a), 8116(c). But the statutory scheme recognizes that a federal employee may sue parties other than the United States for work-related injuries and provides for an adjustment of benefits following

---

[6] Adkins's installation of the hidden camera, despite knowing that doing so was illegal, presents a fact pattern that is more insidious than the conduct in cases he claims are analogous. *See Saul v. United States*, 928 F.2d 829, 834 (9th Cir. 1991) (holding that the CSRA's definition of "personnel action" applied to supervisors who seized and opened federal employee's personal mail at the office); *Hill v. Dep't of Air Force*, 884 F.2d 1318, 1321 (10th Cir. 1989) (holding that the CSRA precluded a *Bivens* remedy where a supervisor eavesdropped on a civilian military employee's personal telephone conversations, even though such conduct "is not an allegation of a violation of a listed prohibited personnel practice").

recovery from such parties. 5 U.S.C. § 8132. Various circuit courts have concluded that the FECA does not bar a federal employee's suit against individual co-employees. *See, e.g., Salazar v. Ballesteros*, 17 F. App'x 129, 130–31 (4th Cir. 2001) (holding that FECA does not prohibit suits against fellow employees (citing *Allman v. Hanley*, 302 F.2d 559, 563 (5th Cir. 1962))); *Heathcoat v. Potts*, 790 F.2d 1540, 1543 (11th Cir. 1986) (following *Allman*, and noting that FECA "is silent on the matter of co-employee suits"); *Bates v. Harp*, 573 F.2d 930, 935 (6th Cir. 1978) (holding that "[e]ven though we are not persuaded that co-employee suits are advisable as a matter of policy, in light of the overwhelming authority in support of such suits, absent an explicit statutory bar, we feel constrained to follow the holding of *Allman* …."); *Davis v. Harrod*, 407 F.2d 1280, 1282 n.2 (D.C. Cir. 1969) (noting that under the FECA appellant could sue her co-employee, but not her employer).

Given the FECA's silence on the matter of co-employee suits, and the fact that the illegal installation of covert surveillance equipment that resulted in Gustafson's alleged injuries is not easily characterized as an "injury by accident" or a "disease proximately caused by employment," we agree with the district court that the FECA does not bar Gustafson's *Bivens* claim against Adkins.

### B. Adkins is Not Entitled to Qualified Immunity

Adkins also argues that the district court erred in denying his motion for summary judgment based on the defense of qualified immunity. Specifically, he claims that his actions did not violate a clearly established constitutional right of which a reasonable law enforcement officer in his position would have known. We review de novo the district court's

denial of summary judgment ruling on qualified immunity, construing the facts in the light most favorable to Gustafson. *Rabin v. Flynn*, 725 F.3d 628, 631–32 (7th Cir. 2013).

The doctrine of qualified immunity "'protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 632 (quoting *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012)). In considering whether Adkins can invoke the defense of qualified immunity, we must inquire: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 914 (7th Cir. 2011) (citation and internal quotation marks omitted). "To be clearly established at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right, and existing precedent must have placed the statutory or constitutional question beyond debate." *Rabin*, 725 F.3d at 632 (quoting *Humphries*, 702 F.3d at 1006) (internal quotation marks omitted). We have jurisdiction to consider appeals from denials of qualified immunity where the denial is based on an issue of law.[7] *Id.*

---

[7] "[I]nstant appeal is not available … when the district court determines that factual issues genuinely in dispute preclude summary adjudication." *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011) (quoting *Johnson v. Jones*, 515 U.S. 304, 313 (1995)); *see also Gutierrez v. Kermon*, 722 F.3d 1003, 1009 (7th Cir. 2013) ("[W]e do not have jurisdiction to review an order denying qualified immunity on summary judgment if the issue on appeal is

Adkins contests the district court's finding as to the second *Hernandez* inquiry: that Gustafson's constitutional right was clearly established at the time of the alleged violation. Adkins argues that the district court erred in concluding that there existed, at the time he installed the covert surveillance equipment, a clearly established constitutional right of which a reasonable official in his position would have known. Adkins relies primarily on *O'Connor v. Ortega*, a case that involved a state hospital employee's claim that authorities improperly searched and seized personal items from his office. 480 U.S. 709 (1987). The case centered on whether the employee had a reasonable expectation of privacy in his office, as well as on the appropriate Fourth Amendment standard for a search conducted by a public employer in areas in which an employee has a reasonable expectation of privacy. *Id.* at 711–12. The Court was divided on the outcome. In *Shields v. Burge*, we interpreted the *O'Connor* Court's plurality opinion:

> [A] work-related "workplace" search is lawful if the search is "reasonable [ ] under all the circumstances." The plurality explained that a search is reasonable if it is "justified at its inception" and if it is "reasonably related in scope to the circumstances" that justified it. A workplace search to investigate work-related misconduct ordinarily is "justified at its inception" if reasonable grounds exist to suspect

whether the record contains sufficient evidence to create a 'genuine' issue of material fact."). For this reason, we do not consider Adkins's claim that the district court erred in finding a factual dispute precluding summary judgment. We lack jurisdiction to address this issue.

> that the search will turn up evidence of the
> employee's misconduct.

874 F.2d 1201, 1203 (7th Cir. 1989) (internal citations omitted) (quoting *O'Connor*, 480 U.S. at 725–26). By contrast, Justice Scalia wrote in a concurring opinion that he "would hold that government searches to retrieve work-related materials or to investigate violations of workplace rules—searches of the sort that are regarded as reasonable and normal in the private-employer context—do not violate the Fourth Amendment." *O'Connor*, 480 U.S. at 732 (Scalia, J., concurring).

Adkins argues that *O'Connor* did not produce a settled analytical framework for when a search violates the Fourth Amendment. For this reason, he contends that his conduct did not violate a clearly established constitutional right. He emphasizes that there was "no opinion of the Court" in *O'Connor* because the judgment was delivered by a four-justice plurality. He also cites *City of Ontario v. Quon*, for the proposition that the scope of an employee's Fourth Amendment rights is unclear. 560 U.S. 746, 757 (2010) ("In the two decades since *O'Connor* … the threshold test for determining the scope of an employee's Fourth Amendment rights has not been clarified further.").

We find that the relevant case law does not support Adkins's contention. "[T]o determine if a right was clearly established at the time of the violation, we look first to controlling precedent on the issue from the Supreme Court and to precedent from this Circuit." *Estate of Escobedo v. Bender*, 600 F.3d 770, 781 (7th Cir. 2010). Both the Supreme Court and this Court have long held that a controlling holding may be gleaned from a plurality opinion. *Ben's Bar, Inc. v. Vill. of*

*Somerset*, 316 F.3d 702, 719 (7th Cir. 2003) ("Because the plurality's decision offers the narrowest ground for the Supreme Court's holding … we find the reasoning of that opinion to be controlling" (citing *Marks v. United States*, 430 U.S. 188, 193 (1977))). The *O'Connor* plurality test is narrower than Justice Scalia's test and is, therefore, the Court's "least-common-denominator holding." *Shields*, 874 F.2d at 1204.

More to the point, we have already held that the *O'Connor* plurality opinion controls because Justice Scalia did not articulate a different standard than the plurality's reasonableness test. *Id.* at 1203–04. In *Shields*, we articulated the governing legal standard: "The essential principle that [*O'Connor*] teaches is that an employer's workplace search must be reasonable. Reasonableness depends upon the circumstances presented in a given situation and upon balancing the public, governmental, and private interests at stake in that situation." *Id.* at 1204. Accordingly, the Supreme Court and this Circuit had clearly established the right of employees to be free from unreasonable employer searches by the time Adkins installed the hidden surveillance equipment in 2007.

Adkins also claims that Gustafson failed to satisfy her burden of setting forth "existing precedent [that] placed the statutory or constitutional question beyond debate." *Rabin*, 725 F.3d at 632 (citation and internal quotation marks omitted). The Supreme Court has made clear that where broad and general constitutional standards are concerned, the inquiry normally requires identification of factually analogous case law. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). However, a broad constitutional test, such as the *O'Connor* plurality's reasonableness test, is sufficient to clearly estab-

lish the law "in an obvious case … even without a body of relevant case law." *Id.* Because this is an obvious case that presents a flagrant Fourth Amendment violation, identification of a body of relevant case law is unnecessary.

In sum, we find that *O'Connor* clearly established the contours of the Fourth Amendment violation Gustafson alleges. Therefore, the district court properly denied Adkins's motion for summary judgment on the basis of qualified immunity.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.