In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-3587

JAMES BOYD,

*Plaintiff-Appellee,*

*v.*

MICKEY OWEN and LESLIE FOOTT,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 04-cv-00025-GPM—**G. Patrick Murphy**, *Chief Judge.*

ARGUED SEPTEMBER 14, 2006—DECIDED MARCH 22, 2007

Before CUDAHY, MANION, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* James Boyd filed an action in the district court alleging that the Department of Children and Family Services (DCFS) child welfare investigator Leslie Foott and her supervisor Mickey Owen violated his rights to due process in their investigation of a claim of child abuse and their finding that the claim against him for physical abuse of a child was "indicated." Foott and Owen filed a motion for summary judgment, arguing that they were entitled to qualified immunity on the claim. The district court denied that motion, and they appeal that denial to this court.

We generally lack jurisdiction to review denials of summary judgment, but under the collateral order doctrine, a denial of summary judgment on the issue of qualified immunity is immediately appealable to the extent that it presents questions of law rather than fact. *Via v. LaGrand*, 469 F.3d 618, 622 (7th Cir. 2006). Therefore, Boyd may not appeal the district court's denial of summary judgment on qualified immunity insofar as that order determines whether the record sets forth a genuine issue of material fact. *Id.; Johnson v. Jones*, 515 U.S. 304, 313 (1995). Such a denial is appealable, however, to resolve disputes concerning an abstract issue of law, such as whether the federal right allegedly infringed was clearly established. *Via*, 469 F.3d at 623; *Johnson*, 515 U.S. at 318; *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). We therefore do not review whether the district correctly determined that genuine issues of fact existed. Instead, accepting the district court's determinations as to the factual issues, and taking the facts as characterized by the district court in the light most favorable to the plaintiff, we determine whether the defendants were nonetheless entitled to qualified immunity as a matter of law. *Via*, 469 F.3d at 623.

On December 30, 2002, DCFS received a hotline report that James Boyd, a police officer with the City of Washington Park, had physically abused the five-year-old daughter of Angela Hampt, a woman with whom he was acquainted. Mary Free, who worked for a crisis center, had received a call from Danny Knight, which alleged that Boyd had caused bruises to the buttocks of Sarah, the daughter of Angela Hampt, and that Boyd also had held a knife to Hampt's throat and that Hampt was afraid of Boyd. Free then conveyed those allegations to DCFS. Knight was a friend of Hampt who lived nearby and had been one of Sarah's babysitters.

Foott was a DCFS child welfare investigator who investigated the allegation, and Owen supervised and participated in the investigation. Upon receiving such an allegation of abuse, DCFS investigators conduct an initial investigation to determine whether credible evidence of child neglect or abuse exists. Credible evidence is established where the available facts, viewed in light of the surrounding circumstances, would cause a reasonable person to believe that a child was abused or neglected. *Dupuy v. Samuels*, 397 F.3d 493, 497 (7th Cir. 2005). If credible evidence of such abuse is found to support the allegation, DCFS designates the report as "indicated." *Id.*

On January 2, 2003, in the early afternoon, Owen and Foott proceeded to Hampt's apartment to investigate. When there was no response at the apartment, they went to Knight's house down the street and talked with him. They then called the Granite City police who accompanied them to Hampt's apartment. At this time, Hampt answered the door. Hampt allowed Owen and Foott to examine Sarah and they observed the bruises. Hampt asked Sarah how she got the bruises, and Sarah responded "James." Hampt denied that (James) Boyd caused it, and suggested a number of other names of possible perpetrators. At that time, Owen decided to take Sarah into protective custody. On the ride to the field office, Foott asked Sarah in the car who caused the bruises, and she again identified Boyd. During that car ride, Foott and Owen decided that they would "indicate" Boyd for the bruising of Sarah's buttocks. Foott contacted Free again, and Free stated that Boyd was potentially dangerous, violent and psychotic. Later on January 2nd, Foott also interviewed another of Sarah's babysitters, but although the report of that conversation mentions bruising observed on Sarah, it does not identify who caused it. There is some dispute as to when Boyd was contacted, but we assume for this appeal that Foott did not speak with

Boyd until February 2003, after he had been indicated for abuse.

In August 2003, Boyd was hired by the Maryville Police Department in a part-time position, with the possibility of being considered for a full-time position in the future. As part of the hiring process, he agreed to a background check. The Maryville Chief of Police later called Boyd into his office and asked him who Angela Hampt was. The Chief indicated that he had learned that Boyd had been indicated for physical abuse, and had been investigated for allegations of sexual abuse (which were subsequently determined to be unfounded.) The Chief further stated that he did not want an officer with a pending or indicated report working for his department. Given the choice of resigning or being terminated, Boyd chose the former. Boyd subsequently filed this lawsuit alleging that the violation of his due process rights by the defendants resulted in the indicated finding, and the loss of his ability to pursue his chosen occupation of law enforcement.

Owen and Foott sought summary judgment on the ground that they were protected from suit by the doctrine of qualified immunity. Under that doctrine, they are shielded from suit unless Boyd can demonstrate (1) the violation of a constitutional right that is (2) clearly established at the time of the alleged violation, so that a reasonable public official would have known that his or her conduct was unlawful. *Green v. Butler*, 420 F.3d 689, 700 (7th Cir. 2005); *Sonnleitner v. York*, 304 F.3d 704, 716 (7th Cir. 2002). In the district court, Boyd argued that they violated his constitutional right to due process of law by issuing an indicated finding under the credible evidence standard, which did not include an adequate investigation or consideration of mitigating evidence. Boyd argued that the constitutional violation was clearly established by this court's decision in *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005).

The district court appears to have conflated the two prongs of the qualified immunity test. The court held that Boyd possessed a protected liberty interest in his employment as a police officer. The court then recognized that our decision in *Dupuy* could not clearly establish any due process violation because it was issued after the events at issue in the case. The court nevertheless held that Foott and Owen violated Boyd's clearly established constitutional right to due process because "DCFS' own rules and regulations imposed a duty to identify other possible explanations for the abuse," and Owen and Foott failed to do so. Dist. Ct. Order at 5.

The district court properly held that our *Dupuy* decision could not demonstrate a clearly established right because it did not exist when these events occurred, but its alternative reasoning is erroneous. The Supreme Court has made clear the requirement of due process is not defined by state rules and regulations, but is an independent determination. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *see also Lyon v. Dept. of Children & Family Services*, 807 N.E.2d 423, 434 (Ill. 2004). Accordingly, the district court erred in determining that the failure to comply with DCFS regulations demonstrated a violation of a clearly established constitutional right.

As we will see, Boyd provides nothing further to demonstrate that the right was clearly established. We cannot jump to that issue, however, because the Supreme Court has made clear that we must first consider whether there was a violation of a constitutional right before we can consider whether that right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Or, more precisely in the context of this summary judgment denial, we must first determine whether, in light of the facts as set forth by the district court, Boyd has alleged sufficient facts for a reasonable jury to find

that the failure of the defendants to consider exculpatory evidence violated his right to due process.

Boyd argues that he possessed a liberty interest in his employment as a police officer, and that the indicated finding deprived him of that interest without due process. Owen and Foott argue on appeal that Boyd does not in fact possess a liberty interest that was implicated by the indicated finding, and therefore that the Due Process Clause does not apply. "'It is well-settled that an individual has no cognizable liberty interest in his reputation.'" *Dupuy*, 397 F.3d at 503, *quoting Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 617 (7th Cir. 2002). However, "'when a state actor casts doubt on an individual's "good name, reputation, honor or integrity" in such a manner that it becomes "virtually impossible for the [individual] to find new employment in his chosen field," the government has infringed upon that individual's liberty interest to pursue the occupation of his choice.'" *Id.* In *Dupuy*, we recognized that an indicated finding effectively bars child care workers from future employment in the child care industry, thus implicating a liberty interest. *Id.* at 503. Owen and Foott argue on appeal that no similar situation is presented here, because there is no state statute requiring potential law enforcement employers to check the child abuse registry, as there is with child care employers. Moreover, Owen and Foott assert that there was no disclosure of the indicated finding that resulted in the loss of employment. The facts underlying these arguments are murky and undeveloped at best, perhaps because it appears that they were never raised to the district court. In the district court, Owen and Foott argued in a cursory sentence or two that there was no property interest in employment that was implicated by the indicated finding, and argued in a later section that a verbal comment made about Boyd did not implicate any liberty interest. They did not, however, argue that the indicated

finding did not implicate any liberty interest. Even when that issue was developed extensively in Boyd's brief, the defendants failed to file any response to it. As such, we need not consider it here, and will assume for purposes of this case only, that a liberty interest is implicated. *Skywalker Communications of Indiana, Inc. v. Skywalker Communications, Inc.*, 333 F.3d 829, 831 (7th Cir. 2003); *Pond v. Michelin North America, Inc.*, 183 F.3d 592, 597 (7th Cir. 1999) ("Arguments not raised in the district court are waived on appeal, . . . as are arguments raised in a conclusory or underdeveloped manner . . . ." [citations omitted]).

The next question, then, is whether the procedures used in investigating the charge and issuing the indicated finding were constitutionally sufficient. Due process is a flexible concept, and the procedures that are constitutionally required are dependent upon the particular situation, and are determined through application of the *Mathews* test. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Sonnleitner*, 304 F.3d at 712-13. The *Mathews* test requires that we balance:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews, id.*

We note initially that Boyd misapplies this test. After first noting that the private interest in employment is a substantial one, Boyd turns to the second prong. Rather than considering the procedures actually followed by the

investigators here, as the *Mathews* test instructs, Boyd focuses exclusively on the DCFS procedures that the investigators should have followed. Because the procedures set forth by the DCFS regulations would have satisfied Boyd's due process concerns, Boyd concludes that there is no risk of erroneous deprivation of his interest under the procedures set forth by Illinois regulations. That misconstrues the test. The issue is whether the procedures *actually* followed presented an unreasonable risk of an erroneous deprivation of the private interest, in light of the government's interest and the probable value of additional safeguards. The focus is not on whether the defendants would have complied with due process had they adhered more faithfully to the state regulations, but whether their actual conduct in this case was constitutionally deficient.

We do not consider this issue on a blank slate, as this court has considered the *Mathews* factors in the context of the DCFS procedures for indicating abuse. Specifically, this court in *Dupuy* discussed at length the credible evidence standard, under which such an indicated finding is made. *Dupuy*, 397 F.3d 493. As we noted in discussing the district court's decision in *Dupuy*, the credible evidence standard must be met in order for DCFS to determine that a report of alleged abuse is "indicated." That credible evidence standard is established where the available facts, viewed in light of the surrounding circumstances, would cause a reasonable person to believe that a child was abused or neglected. *Dupuy*, 397 F.3d at 497. As interpreted by DCFS employees, however, the credible evidence standard resulted in consideration only of inculpatory evidence. *Id.* at 504. "Any" credible evidence was sufficient to cause them to indicate a finding, without any consideration of exculpatory evidence. *Id.* We agreed with the district court in *Dupuy* that due process required that equal consideration be given to both

inculpatory and exculpatory evidence in determining whether credible evidence of abuse or neglect existed. *Id.* at 504-06.

That is the essence of the complaint in this case as well. Boyd argues that the investigation was poorly developed and that exculpatory evidence either was not obtained or was ignored. That deficiency underlies all of his complaints in this case. In *Dupuy*, we were presented with a scenario in which an indicated finding would result in the immediate termination of employment, because the employee was in the child care profession. *Id.* at 497, 499, 503. Accordingly, the private interest at stake was even more substantial than here, because indicated findings are not automatically transmitted to law enforcement employers as they are to child care employers. We agreed with the district court that in that context, the investigators determining whether credible evidence existed to indicate abuse must consider equally exculpatory and inculpatory evidence in order to comport with due process. *Id.* at 504-06. Although not dispositive of this case, because the interest at stake was potentially greater in *Dupuy*, this decision provides strong support for a determination that the procedures used in this case were constitutionally inadequate. The indicated finding had an impact on Boyd's liberty interest in his employment by arguably leading to his termination in this case, as there was some evidence in the record that an indicated finding would operate as a bar to all law enforcement employment (and, as explained above, any argument to the contrary was not presented to the district court). Yet, the investigators initially decided to indicate Boyd for abuse the night they examined Sarah, and based that indication almost entirely on her statement that Boyd was responsible for the bruising. That is not to say that the investigators could not have constitutionally reached that conclusion. The initial hotline report had identified

Boyd as the perpetrator and identified the locale of the bruising, and the physical evidence corroborated that claim. Sarah then identified Boyd, which again was consistent with the hotline report and with the subsequent interview of Knight. But, the investigators did not attempt to develop or consider alternate explanations. They failed to consider past records documenting abuse of Sarah by others, or her psychiatric condition, and failed to provide Boyd with an opportunity to respond prior to the indicated finding. That focus solely on inculpatory evidence, to the exclusion of exculpatory evidence, fails to comport with the requirements of due process, and accordingly Boyd has demonstrated that the actions presented a constitutional violation.

   That does not end the inquiry, however, because qualified immunity nevertheless protects the defendants unless the constitutional right that was violated was clearly established. A plaintiff can establish that a right was clearly established by

> presenting case law that "has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand.". . . [T]hese decisions must demonstrate that, at the time the defendants acted, it was certain that their conduct violated the law. . . . "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

*Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 620 (7th Cir. 2002) [citations omitted]. In the absence of precedent, a right may be clearly established where the contours of the right are sufficiently clear that reasonable persons would have understood their conduct to be unconstitutional, or where the constitutional violation is so patently

obvious that widespread compliance with the law has prevented the court from reviewing it. *Nanda v. Moss*, 412 F.3d 836, 844 (7th Cir. 2005). In other words, qualified immunity protects the defendants unless the unconstitutionality of their actions was apparent, either because a case on point or closely analogous establishes the unconstitutionality of their actions, or because the contours of the right are so established as to make the unconstitutionality obvious.

The plaintiff has the burden of establishing that the constitutional right was clearly established. *Nanda*, 412 F.3d at 844; *Sonnleitner*, 304 F.3d at 716-17. Boyd has entirely abdicated that burden, failing in both the district court and this court to identify any case clearly establishing that such conduct was unconstitutional, or that any line of cases would put the defendants on notice of such unconstitutionality. In the district court, Boyd presented only this court's *Dupuy* case, which we have already noted was decided after the conduct at issue here and therefore could not have possibly apprised them of the unconstitutionality at the time. Nor would the district court decision in *Dupuy* have been of any help, as Boyd apparently recognizes because he does not rely on it, given our court's holding that district court decisions have no weight as precedents and therefore cannot *clearly* establish a constitutional right. *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995).

In this court, Boyd cites only to *Jones v. Wilhelm*, 425 F.3d 455 (7th Cir. 2005), which is irrelevant on many levels. First, it was decided in 2005 and therefore could not possibly have apprised the defendants of the unconstitutionality of their actions in 2003. Moreover, it has nothing to do with the actions at issue here, as it addressed whether officers who mistakenly entered an apartment to serve a search warrant intended for a different address

were protected by qualified immunity. Boyd makes no attempt to explain how that Fourth Amendment challenge to the execution of a warrant by officers could have apprised the defendants that the failure to consider exculpatory evidence in applying the credible evidence standard would be unconstitutional. Boyd has failed to provide any other case at all, even though this issue was a central argument below and in this court. Perhaps that is because Boyd cannot do so. Although some cases held that the failure to consider exculpatory evidence in finding credible evidence of abuse was unconstitutional when coupled with a delay in providing a post-deprivation adversarial hearing, there was no argument of such a delay in this case. *See, e.g.*, *Doyle*, 305 F.3d at 619 (process of determining credible evidence on any plausible evidence of abuse or neglect without weighing conflicting evidence may be adequate in certain circumstances, but violates due process where coupled with an unnecessary and burdensome delay in obtaining a post-deprivation hearing); *Lyon*, 807 N.E.2d at 435-36 (credible evidence standard, which does not require fact finder to consider contrary evidence, to indicate a report does not automatically violate due process, but may violate due process when the subject is not accorded a prompt appeal). We need not speculate as to whether Boyd could have succeeded on this claim, however, for he presents neither those cases or any other cases. He has failed to meet his burden of demonstrating that the constitutional violation was clearly established, and the defendants are entitled to qualified immunity. We REVERSE the order of the district court and REMAND with directions to enter summary judgment for the defendants on qualified immunity grounds.

No. 05-3587                                                13

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*