In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3758

SHONTAY HUMPHRIES,

*Plaintiff-Appellant*,

*v.*

MILWAUKEE COUNTY,
MILWAUKEE COUNTY DEPARTMENT
OF HEALTH AND HUMAN SERVICES,
JUAN MUNIZ, PANG XIONG, and FELICE RILEY,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 10 CV 99—**J.P. Stadtmueller**, *Judge*.

ARGUED APRIL 20, 2012—DECIDED DECEMBER 26, 2012

Before MANION, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge*. Shontay Humphries submitted an application to Milwaukee County, Wisconsin to renew her child care provider certificate. Juan Muniz reviewed her application, sent a standard inquiry to a state agency as part of the background check, and learned that Humphries had a substantiated finding of

child abuse from 1988. As a result, after conferring with his supervisor, Muniz denied Humphries's application. Although Humphries maintains that the denial of her application violated her right to due process, we agree with Muniz and his supervisor that qualified immunity protects them from any liability for this decision. They had no involvement whatsoever in the investigation or determination of the 1988 finding of substantiated abuse, and no case law clearly establishes that they violated Humphries's constitutional rights when they relied on that finding to deny her child care provider renewal application. Therefore, we affirm the district court's grant of summary judgment to Muniz and his supervisor on the basis of qualified immunity.

## I. BACKGROUND

On December 12, 1988, an assistant principal contacted Wisconsin's Child Protective Services after a six-year-old student came to school with a welt on her face. A CPS social worker met with the girl and observed a five- or six-inch mark. The girl told the social worker that her aunt hit her with a shoe or slipper because she was writing on the furniture. The social worker visited the aunt, Shontay Humphries, who was also the child's guardian, and interviewed her as well. The social worker concluded and reported to the state that the incident was one of "substantiated" abuse by Humphries, and the substantiated abuse finding was entered into the state's child offender database. Humphries maintains she was not aware at the time that the finding had been entered.

In Wisconsin, one must have a license in order to be paid to care for four or more children under the age of seven who are not related to the child care provider. Wis. Stat. § 48.65(1). A license holder must submit an application for review every two years. Wis. Stat. § 48.65(1), 48.66(5). On June 27, 2008, Humphries submitted her application for renewal of her child care certification to the Milwaukee County Department of Health and Human Services, as she had been certified in the past. Juan Muniz, a child care specialist in the background check unit, processed Humphries's application. Pursuant to state law, Muniz initiated a background check on Humphries, which includes a check of whether there are any substantiated findings of abuse or neglect against an applicant. *See* Wis. Stat. § 48.685. Milwaukee County, where Muniz worked, did not have access to the state's abuse and neglect findings, so Muniz faxed a request to the Bureau of Milwaukee Child Welfare ("BMCW"), which, despite its name, is a state agency and not an agency of Milwaukee County. A few weeks later, Muniz received a response from the BMCW with a case number for Humphries, so Muniz went to the BMCW office to review and copy the file. The file included a copy of the December 1988 Child Abuse & Neglect Investigation Report that detailed the investigation after the assistant principal's call and concluded that the reported incident was one of "substantiated" abuse.

Pursuant to Wisconsin statute, a county department may not license or renew the license of a child care provider if a determination has been made under

§ 48.981(3)(c)4[1] that the person has abused or neglected a child. Wis. Stat. § 48.685(4m)(a)4. Knowing that, Muniz concluded that Humphries's application had to be denied. He was concerned because the Department had previously certified Humphries in 2004 and 2006, so he consulted with Pang Xiong, his supervisor. Xiong approved the denial of Humphries's application. Apparently, the BMCW had failed to produce the 1988 substantiated abuse finding during the 2004 and 2006 background checks.

With Xiong's approval, Muniz sent Humphries a letter on October 23, 2008 informing her that her child care certification application had been denied. The letter cited the 1988 substantiated finding of abuse and the Wisconsin statute prohibiting a county department from certifying a provider knowing that a determination had been made that the person had abused or neglected a child. The letter also informed Humphries of her right to appeal the denial, which she did. The hearing was postponed several times at Humphries's request, and it was eventually held on February 5, 2009.

---

[1] This provision provides in relevant part:

> The county department . . . within 60 days after receipt of a report that the county department, department, or licensed child welfare agency investigates under subd. 1. [reports of suspicion of child abuse or neglect], whether abuse or neglect has occurred or is likely to occur. The determination shall be based on a preponderance of the evidence produced by the investigation.

In a decision on February 23, 2009, the hearing examiner reversed the certification denial on the basis that the uncertified report of the substantiated finding of abuse that Muniz presented at the hearing lacked foundation and was inadmissible hearsay. The hearing examiner ordered that Humphries be reinstated to the application process. On April 1, 2009, Xiong sent a letter to the BMCW asking it to allow Humphries to appeal the substantiated finding of abuse determination. Humphries received a copy of this letter as well.

Humphries filed this suit on December 31, 2009, invoking 42 U.S.C. § 1983 and alleging that her procedural due process rights were violated when the defendants denied her application for a child care certificate based on the 1988 substantiated finding of child abuse without first affording her an opportunity to contest that finding of abuse. The State of Wisconsin took control of the child care program from Milwaukee County the day after Humphries filed her lawsuit, including the responsibility for processing child care certification renewal applications. About six months later, the BMCW state agency overturned the 1988 substantiated abuse finding. Muniz then forwarded Humphries's application onto the next steps in the child care certification process, and Humphries received her child care certification from the state.

In the lawsuit, the defendants moved for summary judgment. The district court granted their motion after concluding that they were entitled to qualified immunity. Humphries appeals that decision with

respect to Muniz and Xiong. She does not appeal the dismissal of her claims against other defendants or for injunctive and declaratory relief.

## II. ANALYSIS

We review the district court's grant of summary judgment on the basis of qualified immunity de novo. *Levin v. Madigan*, 692 F.3d 607, 622 (7th Cir. 2012). The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court held in *Pearson* that a court may grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law without first resolving whether the purported right exists. *Id.* at 236; *see also Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (noting that this approach comports with the Court's reluctance to decide constitutional questions unnecessarily).

As the plaintiff, Humphries has the burden of defeating the qualified immunity defense that the defendants raised, so she must show that the due process right she asserts was clearly established by prior case law. *See Purvis v. Oest*, 614 F.3d 713, 717 (7th Cir. 2010). To be clearly established, at the time of the challenged conduct, the right's contours must be "'sufficiently

clear' that every 'reasonable official would have under-stood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* This standard "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle*, 132 S. Ct. at 2093 (quoting *Anderson*, 483 U.S. at 639).

The "clearly established" requirement is not satisfied here. As Humphries emphasizes, there is case law estab-lishing circumstances when a person is entitled to hearing rights before a finding of substantiated child abuse may be entered, and there is no suggestion that a hearing took place before the substantiated finding of child abuse against Humphries was entered in the Wis-consin database. *See Doyle v. Camelot Day Care Ctrs., Inc.*, 305 F.3d 603, 617 (7th Cir. 2002); *Duprey v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005); *Boyd v. Owen*, 481 F.3d 520, 525 (7th Cir. 2007). Humphries argues in her brief that *Doyle*, *Dupuy*, and *Boyd* clearly established that it violates due process for an initial investigation of abuse or neglect allegations not to take into account exculpatory evidence, for an agency to attach what she calls an "abuser label" without some pre-deprivation notice and review process, and for an agency to fail to give notice and an opportunity for a full evidentiary hearing very soon after identifying someone as a

purported "abuser." But Muniz and Xiong had no involvement before or in the entry of the finding of substantiated abuse here. It is undisputed that they had no role in the child abuse investigation that resulted in the 1988 finding and had no role at all in 1988 when the substantiated abuse determination was made.

None of the case law to which Humphries points holds that persons without a role in the abuse determination may not later rely on such a determination without first independently ensuring the determination was made in accordance with due process. Humphries argues that because Milwaukee County made the substantiated finding of abuse against Humphries in 1988, at a time when it did not consistently provide due process to individuals against whom a finding was made, the defendants should have been on notice that it was unconstitutional to deny Humphries's application for child care certification based on the finding without first giving her an opportunity to refute the finding of abuse. She points to the *Doyle*, *Duprey*, and *Boyd* cases and argues that they clearly established this proposition. These cases, however, do not reach as far as Humphries would like.

Our decision in *Doyle* would not put a reasonable person on notice that relying on the substantiated finding of abuse to deny the certification renewal as Muniz and Xiong did was unconstitutional. In *Doyle*, Illinois Department of Children and Family Services ("DCFS") officials "indicated" the plaintiffs for abuse and medical neglect of a child after a brief investigation

and ex parte proceeding. (Being "indicated" for abuse in Illinois is substantially the same as having a "substantiated" finding of abuse in Wisconsin.) The officials recorded that determination in a statewide registry and also disclosed their findings to the plaintiffs' employers. 305 F.3d at 608. The plaintiffs lost their jobs as child care providers as a result, and they brought a procedural due process claim against the DCFS officials. *Id.* They maintained that the use of the credible evidence standard during administrative proceedings, the failure to provide them with adequate notice of the findings against them, and the delay preceding their post-deprivation hearings violated due process. We ruled that "the credible evidence standard, operating in conjunction with a belated post-deprivation hearing, failed to afford adequate process in this case." 305 F.3d at 620.

*Doyle* would not put a reasonable person in the position of Muniz or Xiong on notice that they could not rely on the 1988 substantiated finding of abuse. The defendants in *Doyle* who violated the plaintiffs' due process rights all played a role in the child neglect indication determination. The defendants here did not. Neither Muniz nor Xiong had any role in the child abuse investigation, nor did they or their county department have any power or control over the state finding. It is true, as Humphries emphasizes, that *Doyle* did not limit its holding to investigators. But the defendants we found liable in that case all had some involvement in the indication decision, either as investigators, supervisors who approved the investigators' findings, or administrators who permitted the indicated reports

to be recorded in the central register or had created the policies. *Id.* at 615. And we dismissed the claims against the plaintiffs' employers because their actions did not contribute to the constitutional deprivation. *Id.* at 624 ("The DCFS employees indicated Ms. Doyle and Mr. Konold, placed their names in the central register and then disclosed these findings. It was this conduct, standing alone, that effectively blacklisted Ms. Doyle and Mr. Konold from working in child-care services and implicated the protected liberty interest. The actions of Camelot and Central Baptist did not contribute to the constitutional deprivation that occurred in this case.").

Our decision in *Dupuy* also would not have caused a reasonable person to understand that relying on a substantiated finding of abuse as Muniz and Xiong did was unconstitutional. There, a class of Illinois child care workers who had been indicated for child abuse or neglect alleged that DCFS's procedures for investigating such allegations deprived them of due process of law. *Dupuy*, 397 F.3d at 496. We ruled that due process requires equal consideration of both inculpatory and exculpatory evidence when determining whether credible evidence of abuse or neglect exists. *Id.* at 506-07. As in *Doyle*, our decision in *Dupuy* concerned the process required before an indication of abuse may be entered. *Dupuy* does not speak to what government employees who do not work in the investigation of child abuse must do when later faced with an existing finding of abuse.

The final case to which Humphries points also does not help her. In *Boyd*, we considered a plaintiff's claim that

a child welfare investigator and her supervisor violated the plaintiff's right to due process in their investigation and conclusion that a claim against the plaintiff for child abuse was indicated. 481 F.3d at 522. After discussing *Dupuy*, we stated that the focus solely on inculpatory evidence, at the exclusion of exculpatory evidence, meant that the procedure used in the investigation and indication determination failed to comport with due process. *Id.* at 526. Because *Dupuy* was decided after the decision to indicate Boyd's abuse, however, we affirmed the dismissal of his claims on the basis of qualified immunity because he could not demonstrate that the right was clearly established at the time of the investigation. *Id.* at 527. Like *Doyle* and *Dupuy*, our decision in *Boyd* does not establish that a person with no role in the abuse determination who later relies on such a finding acts in violation of the right to due process. Indeed, the implication of Humphries's position seems to be, for example, that a public school principal could be sued for declining to hire a teacher on the basis of a prior child abuse determination with which the principal had no involvement if the principal had not first independently verified whether that finding had been made in accordance with due process. The existing case law does not support such a position.

Humphries also argues that Muniz and Xiong denied her due process when she did not immediately receive her certification after the hearing examiner's February 23, 2009 decision. Because a certified copy of the substantiated abuse finding was not presented at the hearing, the hearing examiner reversed the certification

denial. Humphries asserts that Muniz and Xiong refused to obey the hearing examiner's order and that their "continued post-hearing deprivation" violates the Due Process Clause. Humphries points to no case law to support her argument on this point and instead maintains it is self-evident that government officials must comply with orders.

Muniz and Xiong did not fail to comply with the hearing examiner's order. The order did not direct that Humphries was to receive her certification simply by virtue of that order. Rather, the order stated in its findings of fact that Humphries "may not be immediately reinstated to conduct Certified Childcare, as Petitioner was not revoked from a current certification." Instead, the order directed that "the Petitioner is to be reinstated to the Application process of Childcare Certification with the signing of this order at the point that the process was interrupted on October 23, 2008." And in direct contradiction to what Humphries now argues, the order stated: "However, concerning the demand of the Petitioner to be recertified immediately, this Hearing Examiner makes the determination that the Petitioner was not certified when the County denied childcare certification on October 23, 2008 . . . . Therefore, that demand would be unreasonable." The hearing examiner's decision only ordered that Humphries be reinstated to the certification process.

Consistent with that decision, on April 1, 2009, Xiong wrote to the BMCW, explained that the County had denied Humphries's certification based on the substantiated

finding, that Humphries had a hearing, and that she presented evidence during the hearing that she had not been aware of the substantiated finding by the BMCW and therefore had not been afforded the appropriate appeal rights. Xiong requested that the state agency "send notification of the substantiated CAN [Child Abuse and Neglect] finding with appropriate appeal rights to Shontay Humphries" and stated that "Milwaukee County believes that due process and fundamental fairness require that Shontay Humphries have an opportunity to appeal the basis of the finding by BMCW." The letter further stated that the County would hold the certification action in abeyance until there was a resolution on the underlying CAN appeal. A copy of this letter was sent to Humphries through her counsel as well. Instead of pursuing the matter with the BMCW, the entity that had the power to change the substantiated finding, Humphries filed this lawsuit in December 2009. *Cf. Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003) ("[W]e do not allow a plaintiff to claim that she was denied due process just because she chose not to pursue remedies that were adequate."). When the substantiated finding of abuse was addressed with the BMCW, it reversed the finding, and then Humphries received her certification.

Humphries also contended at oral argument that her due process rights were violated because she never received the opportunity to argue that the 1988 substantiated finding abuse was not a determination under § 48.981(3)(c)4. The Wisconsin statute provides that child care certification must be denied if a "determina-

tion has been made under § 48.981(3)(c)4 that the person has abused or neglected a child," but the statute does not use the term "substantiated finding of abuse." Wis. Stat. § 48.865(4m)(a)4. Although Humphries contended at oral argument she never had the opportunity to make the argument, Humphries stated in her reply brief that "the quasi judicial administrative hearing before Hearing Examiner Partipillo was Ms. Humphries' opportunity to be heard, *inter alia*, that a 'substantiated finding of abuse' (whether from 1988 or 2008) is not a determination under§ 48.981(3)(c)4 . . . . " The brief then argued that Muniz and Xiong failed to obey the hearing examiner's order, which as we discussed, they did not.

To the extent Humphries is arguing that Muniz and Xiong violated her constitutional right to due process by concluding that the 1988 substantiated abuse finding was the equivalent of a determination under § 48.981(3)(c)4, and denying her certification as a result, we disagree that it was clearly established that they were wrong to do so. Wisconsin Statute § 48.685(4m)(a)4 strictly prohibits a county department from certifying an applicant as a child care provider if there has been a determination under § 48.981(3)(c)4 that the person has abused or neglected a child. The County has no discretion to overlook a finding of abuse. The 1988 finding was entered into the State's database prior to the enactment of Wisconsin Statute § 48.685(4m)(a)4, but the statute gives no guidance as to how a government employee conducting the requisite background check is to treat a finding of abuse made prior to its passage. Nor does Humphries point to any

case law that might have provided guidance. The County's internal caregiver background check manual, while recognizing that a person might not be aware of a pre-1999 finding of abuse entered against her as before then the agency often did not provide due process to the person against whom the finding was made, also does not address what a child care specialist should do when a pre-1999 finding of substantiated abuse is discovered as part of a background check. In light of Wisconsin's strict direction against certification when there is an existing abuse finding on the books and a lack of direction as to how to treat a pre-1999 finding, Muniz and Xiong did not act unreasonably. That is, Humphries has not demonstrated that it was clearly established that Muniz and Xiong were wrong to deny Humphries's certification based on a pre-1998 substantiated finding of abuse.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.