In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-3881

JASON FINDLAY,

*Plaintiff-Appellee,*

*v.*

JONATHAN LENDERMON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division at Lafayette.
No. 4:10-CV-98—**Theresa L. Springmann**, *Judge.*

ARGUED MAY 22, 2013—DECIDED JUNE 14, 2013

Before FLAUM, ROVNER, and SYKES, *Circuit Judges.*

FLAUM, *Circuit Judge.* In September 2009, Deputy Sheriff Jonathan Lendermon found himself in the middle of a long-running family squabble between Jason Findlay and Findlay's uncle, Clark Howey. Neighbors as well as family, the two lived next door to each other. Howey suspected Findlay of trespass and vandalism, giving rise to the bickering that ensnared Deputy Lendermon. When Findlay found a surveillance camera set up at the property line, he called the Sheriff's Office to file an

abandoned property report, and Lendermon responded to the call. With video running, Findlay ultimately made comments suggesting he had, in fact, trespassed, and Lendermon decided to confiscate as evidence the memory chip containing these statements. At some point, the memory chip separated from the camera and fell to the floor. Findlay says Lendermon tackled him as he reached to pick up the chip. Lendermon says he simply grabbed Findlay's arm to prevent him from picking up the chip before Lendermon could seize it. A lawsuit followed, in which Findlay alleged the excessive use of force. The district court denied Lendermon's motion for summary judgment on the excessive force claim. We reverse. Because Findlay has not carried his burden of showing the violation of a clearly established right, Lendermon is entitled to qualified immunity.

## I.  Background

### A.  Factual Background

Findlay and Howey are neighbors, living on adjacent lots. Howey owns his property. Findlay lives with his 87-year-old grandmother, Elizabeth, on his mother's land. On September 25, 2009, Findlay found a camcorder near the property line and called the Sheriff's Office to file an abandoned property report. Lendermon responded to the call.

On his way to Findlay's, Lendermon spoke with Aaron Lorton—a police officer with the City of Lafayette and also Howey's son-in-law—who admitted ownership

of the camcorder. When Lendermon arrived at the property, he spoke first with Howey. Howey told the deputy that he and Lorton had placed the camera because he suspected Findlay of trespassing onto and vandalizing his property.

Lendermon spoke with Findlay next, who recorded his interactions with Lendermon on the camcorder (telling Lendermon he had had some "bad experiences" with the police in the past). Findlay showed Lendermon where he had found the camera, explained his understanding of the property lines (he believed the camera was placed on his mother's property), and told Lendermon that Howey had warned him against trespassing. The camcorder captured all of these statements. After that conversation ended, Lendermon went to his patrol car while Findlay returned to his house.

From his cruiser, Lendermon radioed the dispatch officer who, after checking the Geographic Information System website for Tippecanoe County, confirmed that the camcorder sat on Howey's property, not Findlay's. Lendermon and the dispatch officer realized the evidentiary value of the video recording—in which Findlay admits his uncle's warnings about trespass and explains precisely from where he recovered the camera—and agreed to seize the camcorder as evidence.

As a result, Lendermon returned to the house, where Findlay invited him in. Upon entry, he joined Findlay and Elizabeth at the kitchen table. Still recording, the camcorder sat at the center of the kitchen table. Lendermon told Findlay he was confiscating the camcorder, but

Findlay pulled it away and took the memory chip out. Ultimately, the chip ended up on the kitchen floor underneath the washing machine. Lendermon says Findlay threw the chip there; Findlay says he dropped it.

In any event, Findlay reached to pick up the chip. Here again, the parties tell conflicting accounts of what happened. According to Findlay, Lendermon suddenly leapt up, grabbed him by the shoulders, and tackled him to the ground. Findlay's chest hit the floor, and he landed on a bottle of laundry detergent. Findlay reported pain and, on the advice of his attorney, consulted with a doctor a few days after the incident. The doctor found no evidence of any injury. The grandmother corroborated this account in her deposition.

Unsurprisingly, Lendermon reports a different story, saying he simply grabbed Findlay's arm to prevent him from reaching and/or destroying the memory chip. Lendermon acknowledged in his deposition, though, that Findlay did not do or say anything suggesting intent to destroy the chip.

Lendermon ultimately recovered the chip, placed Findlay in handcuffs, and arrested him for resisting law enforcement and obstruction of justice. The prosecutor dropped the charges.

## B.  Procedural Background

Findlay filed a three-count complaint under 42 U.S.C. § 1983 alleging claims of excessive force, false arrest, and wrongful seizure. The parties cross-moved for summary

judgment with Findlay requesting judgment on the false arrest and wrongful seizure claims. Lendermon moved for summary judgment on all counts and raised a qualified immunity defense.

Finding no issues of material fact on the wrongful seizure claim and concluding that the plain view and exigency exceptions justified seizing the memory chip and video camera, the court granted Lendermon's motion for summary judgment. Also finding no issues of material fact on the false arrest claim, the court found Lendermon had probable cause to arrest Findlay for resisting law enforcement, Ind. Code § 35-44.1-3-1(a), obstruction of justice, Ind. Code § 35-44.1-2-2(a), refusal to aid an officer, Ind. Code § 35-44.1-3-3, and trespass, Ind. Code § 35-43-2-2(a). Thus, the court also granted summary judgment for Lendermon on the false arrest claim without considering whether Lendermon had probable cause to arrest Findlay for conversion. Ind. Code § 35-43-4-3(a).[1]

The district court denied Lendermon summary judgment on the excessive force claim, though, finding a genuine dispute of material fact in the differing accounts of the force Lendermon applied to Findlay when Findlay reached for the fallen memory chip. Assuming

---

[1] In this interlocutory appeal, we consider only the district court's denial of Lendermon's qualified immunity defense. Thus, at the current juncture, we express no opinion on the district court's entry of summary judgment for Lendermon on the wrongful-seizure and false-arrest claims.

the truth of Findlay's account and applying the three-factor analysis from *Graham v. Connor*, 490 U.S. 386 (1989), the district court concluded that a reasonable jury could find Lendermon used excessive force in tackling Findlay. Finding a constitutional violation that was clearly established at the time of the conduct, the court denied Lendermon's motion for summary judgment raising the qualified immunity defense. Lendermon appealed.

## II. Discussion

Qualified immunity protects public servants from liability for reasonable mistakes made while performing their public duties. *See Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). Defeating qualified immunity requires (1) conduct violating the plaintiff's constitutional or statutory rights that is (2) clearly established at the time of the violation such that a "reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). *Pearson v. Callahan*, 555 U.S. 223, 242-43 (2009), encouraged courts to begin with the substantive constitutional violation, but we remain free to consider first whether the right is clearly established if doing so will conserve judicial resources. We find it economical to do so here and thus consider only whether Findlay has shown that the alleged constitutional violation—tackling a suspect under the circumstances presented in

this case—was clearly established.[2] In doing so, we apply de novo review, *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012), and draw all factual inferences in favor of the non-moving party, *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995).[3]

Even when a public official's actions have violated a plaintiff's constitutional rights, the official can escape liability if the right was not clearly established at the time of the violation. *Denius*, 209 F.3d at 950. Importantly, the plaintiff must show that the right is clearly established such that "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal punctuation omitted) (quoting *Anderson*, 483 U.S. at 640); *e.g.*, *Humphries*, 702 F.3d at 1006. He can carry this burden either by identifying a "closely analogous case that established a right to be free from the type of force the police officers used on him" or by

---

[2] We express no opinion on whether Lendermon's actions (as alleged by Findlay) constitute excessive force under *Graham v. Connor*. Likewise, we leave unaddressed Lendermon's argument that force motivated by a desire to preserve evidence bears on *Graham*'s determination of reasonableness.

[3] Findlay argues Lendermon has waived the qualified immunity defense. Lendermon's answer, however, asserted "immun[ity] from suit as to the alleged actions." Moreover, he squarely raised qualified immunity in support of his motion for summary judgment. That "supplie[s] adequate notice to the plaintiffs" that qualified immunity is at issue. *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913-14 (7th Cir. 2011).

showing "that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment." *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008) (quoting *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996)). Findlay has not carried this burden.

In opposing Lendermon's qualified immunity defense before the district court, Findlay attempted to apply the clearly established law requirement to the facts of his case in only one sentence: "In the instant case, it is clear that the conduct of Defendant Lenderman (and Defendant Huber, in authorizing in advance the conduct of Lendermon) violated the clearly established constitutional rights of the Plaintiff." That statement neither identifies a closely analogous case nor adequately explains how Lendermon's force was "so plainly excessive" as to defeat a qualified immunity defense.

Findlay's analysis of this issue on appeal is likewise deficient. He first argues that the objective reasonableness standard "mirrors the objective reasonableness test for qualified immunity, thus creating a single analysis for both constitutionality and entitlement to qualified immunity." *Saucier v. Katz*, however, squarely rejected this argument. 533 U.S. 194, 200-07 (2001). As *Saucier* explained,

> [o]fficers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution. Yet, even if a court were

to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, *Anderson* still operates to grant officers immunity for reasonable mistakes as to the legality of their actions. The same analysis is applicable in excessive force cases, where in addition to the deference officers receive on the underlying constitutional claim, qualified immunity can apply in the event the mistaken belief was reasonable.

*Id.* at 206. In short, "while the substantive constitutional standard protects officers' reasonable factual mistakes, qualified immunity protects them from liability where they reasonably misjudge the legal standard." *Catlin v. City of Wheaton*, 574 F.3d 361, 369 (7th Cir. 2009). The substantive constitutional test, then, does not collapse into the qualified immunity test as Findlay suggests.

Next, in an effort to identify a "closely analogous case," Findlay points only to *Gray v. City of Hammond*, 693 F. Supp. 2d 823 (N.D. Ind. 2010). To begin, Lendermon's altercation with Findlay occurred in 2009, pre-dating *Gray*. Therefore, *Gray* itself could not have—at the time of the violation—clearly established the rights Findlay asserts. And neither does *Gray* identify a pre-2009 case clearly establishing those rights. Instead, *Gray* notes only that the "right to be free from unreasonable seizure was a clearly established right." *Id.* at 845. But qualified immunity requires the plaintiff to produce a case "clearly establish[ing] [the right] in a particularized sense, rather than in an abstract or general sense." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 731 (7th Cir. 2013).

That broad statement is not sufficiently particularized to the facts Findlay alleges and does not satisfy Findlay's burden of showing a violation of clearly established law.

Findlay offers nothing more to carry his burden of showing a clearly established right. Because he has neither identified a sufficiently analogous case nor adequately explained how Lendermon's actions were so plainly excessive that any reasonable officer would know it violated the constitution, he cannot defeat Lendermon's qualified immunity defense. *Cf. Soriano v. Town of Cicero*, No. 10-3352, 2013 WL 1296780, at *2 (7th Cir. Apr. 2, 2013) (non-precedential) (noting plaintiff's burden to show clearly established right and finding that burden unsatisfied where defendant had not responded to qualified immunity defense in briefing). In reaching this conclusion, we do not suggest that no "plainly excessive" argument could ever be made from the facts as Findlay presents them. But the burden to make this showing rests squarely on Findlay. He has not done so and therefore cannot prevail.

## IV. Conclusion

Because Findlay has not identified any sufficiently analogous case clearly establishing the constitutional right he accuses Lendermon of violating, and because Findlay offers no adequate explanation for how Lendermon used force "so plainly excessive" that it proved clearly established notwithstanding the absence of such a case, we REVERSE the district court's denial

of Lendermon's motion for summary judgment on quali-
fied immunity grounds.